IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LAUREN JORDAN,

    Plaintiff,

v.                                                                    Case No.:

TRULIEVE, INC., a Florida Corporation,

    Defendant.

_____/

## COMPLAINT

Plaintiff sues Defendant and states:

### JURISDICTION AND VENUE

1. This action for monetary damages, for declaratory and injunctive relief, and for other equitable and ancillary relief is brought under The Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. 1981a; under the Florida Civil Rights Act, §§ 760.01-11, Florida Statutes; and under the Florida Whistleblower Act, §§ 448.101-105, Florida Statutes.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claim arises under the laws of the United States. The Court has jurisdiction of the state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants corporate headquarters is in Tallahassee, Florida.

4. Plaintiff Lauren Jordan ("Plaintiff" or "Jordan") is a citizen of the United States and a citizen and resident of the State of Louisiana, who resided in Florida at all times material hereto.

5. Defendant Trulieve, Inc., is a Florida corporation with its headquarters in Tallahassee, Leon County, Florida.

6. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201–2202.

## CONDITIONS PRECEDENT

**7.** All conditions precedent to bringing this action have occurred or been fulfilled. Specifically, Plaintiff obtained a right-to-sue letter from the U.S. Equal Employment Opportunity Commission and has timely filed this Complaint.

## GENERAL ALLEGATIONS

8. Plaintiff began employment with Defendant in mid-October, 2019, at a newly-opened marijuana dispensary in Panama City Beach, Florida.

9. Plaintiff's immediate supervisor, Christopher Kibler began sexually harassing her by the end of October, 2019.

10. Trulieve employees got a one-hour lunch break.

11. Plaintiff was new to the area and had no friends yet.

12. Kibler invited Plaintiff to his house for a sandwich. Plaintiff had a bad feeling, so she asked a female co-worker to come along and asked Kibler how his wife would feel about her coming to his home. Kibler said his wife would be okay with it and loaded the two women in his truck.

13. At lunch, Kibler spoke disparagingly of his wife.

14. The next day, Kibler reported to Plaintiff that he had spoken to his wife and she did not mind at all having him bring Plaintiff home for lunch. Kibler asked Plaintiff to come alone this time.

15. Still, Plaintiff again persuaded the reluctant female co-worker to come along. Kibler confessed he had not told his wife and that his wife had questioned where the leftovers had gone.

16. Plaintiff thereafter refused to go to Kibler's home, though he asked her to come to lunch there many more times.

17. Kibler would make "mmmm" noises whenever Plaintiff was in his presence. These were obviously intended in a sexual way. He did this to other women in the shop.

18. He would look at women and say to Plaintiff and anyone else, "damn, I would like to tap that."

19. He would repeatedly place his hand on the back of Plaintiff and other

female employees and glide it all the way down to their buttocks even after they had told him not to do it.

20. Kibler frequently spoke of his previous job as a prison guard and how it had prepared him for his current position. On one occasion he looked at Plaintiff and said loudly, in front of three of her co-workers, "The thought of you in an orange jumpsuit gives me a boner." Those who heard it were in shock.

21. Kibler said Plaintiff was too thin to have such large breasts naturally. He would make comments often about her breasts, including questions about whether her implants were silicon or saline. He said they looked so soft he would like to lay his head on them like a pillow.

22. Plaintiff complained to Kibler's supervisor, Rachel Alvaro, who was more upset about the complaints than about Kibler's behavior. She considered Kibler's sexual harassment uproariously funny and would join in it at times. Alvaro began retaliating against Plaintiff for Plaintiff's complaints.

23. Kibler would undress the female employees with his eyes and lick his lips. When a female employee bent over to get an item from the lower drawers, Kibler would stop what he was doing to make theatrical show of staring at her.

24. Kibler passed Plaintiff at her cash register and said, "mmm, the things I wish I could do to you."

25. Women experienced Kibler's unwanted touching, jokes, and comments

daily. Three besides Plaintiff complained about him. Two quit because of the failure of Trulieve to take remedial action.

26. General Manager Rachel Alvara appeared to like the environment Kibler was creating and would sometimes contribute to it.

27. On January 18, 2020, Plaintiff was assigned to go on a delivery with Kibler. She was excited about being allowed to go on delivery but so apprehensive about it being with Kibler that she put a frowny face on her text reporting to three co-workers that Kibler was going with her. She dreaded his sexually harassing behavior.

28. On the drive from Panama City Beach to Destin and back, Kibler repeated touched Plaintiff inappropriately. He began by grabbing her knee and pretending he had mistaken it for the gear shift. He began driving recklessly so he could slam on the brakes reach his arm in front of Plaintiff to press against her breasts, pretending to keep her from being thrown forward, though she had her seatbelt fastened. He was exclaiming, "Wow, those are nice," when he touched her breasts. He moved his hand up her leg, close to her private parts. Plaintiff placed both of her feet up on the seat and faced the window to avoid Kibler's touching after he refused her requests to stop it. Kibler told Plaintiff he would have her fired if she reported his touching.

29. Plaintiff was not only mortified by the improper touching and

commentary, but terrified of an accident from the reckless driving.

30. Plaintiff was afraid to tell Rachel Alvaro because Alvaro had been so resistant about receiving prior reports. Alvaro had shown displeasure upon being told of Kibler's harassment, had laughed at Kibler's conduct and jokes when these things occurred in front of her, and had refused to document or report sexual harassment up her chain of command. Alvaro was the highest on-site authority.

31. When Kristen Overman reported to Alvaro in late February, 2020, that Kibler caressed Overman's butt, on video, and said, "my bad, but nice," Alvaro responded with a retaliatory and harmful act.

32. Alvaro moved Overman and Kibler to a different room with their desks right next to each other. Kibler took the opportunity of that propinquity to call Ms. Overman a "lying whore" and make up outrageous falsehoods about her. Ms. Overman reported this conduct to Human Resources (HR). After weeks of inaction by HR and continued harassment, Ms. Overman quit the job. Plaintiff took this as a further example of what women could expect if they complained of sexual harassment by Kibler.

33. Kibler's behavior became more erratic and was apparently influenced by being high on some substance on the job. He began referring to Plaintiff as a "bitch" whenever she sought his assistance as her manager. He told a coworker, regarding Plaintiff, "I'm not helping that bitch she can figure it out."

34. Plaintiff was already underweight, but she began losing more weight from the stress of the workplace harassment. Kibler noticed this and began trying to aggravate the situation by increasing the stress and by interfering with Plaintiff's eating, hoping to force her resignation, as he had forced Ms. Overman's.

35. When Kibler denied Plaintiff her scheduled lunch on March 3, 2020, she had a panic attack and put in to leave work. Earlier that day, Kibler had interfered with Plaintiff's breakfast. He visibly stalked Plaintiff as she walked to her car with a list of items to fetch from McDonald's for herself and a co-worker Jan Volpi. As Plaintiff drove away, Kibler came running back into the building alleging that Plaintiff had just left with a bag of product (marijuana). Ms. Volpe intervened to explain that she had written her breakfast order on an empty bag and given it to Plaintiff. Still, GM Rachel Alvaro confronted Plaintiff like a thief upon her return.

36. The following week, Trulieve suspended Plaintiff without pay for three days and put her under investigation. Rachel Alvaro told Plaintiff that Kibler had gone over her head to Loss Prevention and accused her of misconduct regarding certain receipts from January and February. Nothing came of the "investigation."

37. On March 13, 2020, Plaintiff reported to HR and to Alvaro, more information on Kibler's harassment. Neither took any action, despite multiple complaints from several victims about Kibler's sexual harassment and apparent intoxication on the job.

7

38. Alvaro told Plaintiff that despite all the trouble, Kibler was still her manager and she must respect him and follow his commands or she would be written up. Alvaro then removed Plaintiff from her consultant position and assigned her to doing only deliveries with Kibler as her direct supervisor. Kibler saw to it that Plaintiff would often be sent out to the wrong place, with folders missing, and incorrect product to make her look bad and be frustrated and stressed.

39. Plaintiff grew increasingly alarmed as her sleep and appetite disturbances caused more weight to melt off her already overly-slender frame. Kibler was hostile to Plaintiff. She also learned that behind her back, he never referenced her by name, but as "the bitch" or "the whore." Plaintiff became afraid to walk to her car alone, because Kibler chain smoked and was so often outside. He glared menacingly at her as she walked to her car. Kibler boasted that nobody messes with him because he is from that area and can call in his boys.

40. As the stress became unbearable, Plaintiff went out on leave from June 15 to July 31, 2020. She was called back four days early on July 27, 2020, and assigned to go on deliveries with Kibler, despite all that had passed between them and management's knowledge of the situation.

41. Unwilling to be groped in that car again, Plaintiff went home when she could find nobody to straighten out the situation.

42. The next day, Trulieve terminated Plaintiff. When she found all her

access cut off, she complained to HR.

43. Trulieve called the assignment to drive with Kibler and the termination a "misunderstanding," stating in its EEOC response that Plaintiff misread her schedule. Plaintiff knew very well how to read her schedule. There was no misunderstanding. Trulieve's HR simply realized that it's personnel had fired Plaintiff for refusing to submit to another round of sexual harassment.

44. On July 30, 2020, a Trulieve HR official, Jhakira Russell, wrote a memo ordering Plaintiff's reinstatement because she was "terminated prematurely."

45. In the immediate aftermath of the "reinstatement," Plaintiff learned she had been excluded from an important upcoming meeting. She, accordingly realized she had been constructively discharged and did not return.

46. Plaintiff has been compelled to retain counsel to vindicate her rights in this matter and owes a reasonable attorney's fee and litigation costs.

### COUNT I – 42 U.S.C. § 2000(e) et seq.
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### SEX DISCRIMINATION

47. Plaintiff realleges paragraphs 1 through 46.

48. Plaintiff is a female and is thus a member of a protected class.

49. Plaintiff has suffered discrimination based on sex as well as a hostile environment based on sex.

50. The sexually harassing conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile or abusive.

51. Plaintiff found her work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct.

**52.** Management level employees knew, or should have known, of the abusive conduct. Plaintiff provided management-level personnel with information sufficient to raise a probability of discrimination and harassment in the mind of a reasonable employer.

53. Defendant did not exercise reasonable care to prevent discrimination in the workplace and did not exercise reasonable care promptly to correct any discriminatory behavior there.

54. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

55. The foregoing actions of Defendant and its agents and employees constitute unlawful action, including constructive discharge, against Plaintiff in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

56. Plaintiff has suffered damages because of Defendant's actions.

## COUNT II – §§ 760.01-760.11, FLORIDA STATUTES
## FLORIDA CIVIL RIGHTS ACT
### SEX DISCRIMINATION

57. Plaintiff realleges paragraphs 1 through 46.

58. Plaintiff is a female and is thus a member of a protected class.

59. Plaintiff has suffered a hostile environment based on sex.

60. The sexually harassing conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile or abusive.

61. Plaintiff found her work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct.

62. Management level employees knew, or should have known, of the abusive conduct. Plaintiff provided management level personnel with information sufficient to raise a probability of discrimination in the mind of a reasonable employer.

63. Defendant did not exercise reasonable care promptly to correct any discriminatory behavior there.

64. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

65. The foregoing actions of Defendant and its agents and employees

constitute unlawful action, including constructive discharge, against Plaintiff in violation of the Florida Civil Rights Act, §§ 760.01-760.11, Florida Statutes.

66. Plaintiff has suffered damages because of Defendant's actions.

### COUNT III – 42 U.S.C. § 2000(e) et seq.
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### RETALIATION

67. Plaintiff realleges paragraphs 1-46.

68. Plaintiff engaged in protected conduct by objecting to the sex-based animus directed at her by Defendant's agents and employees.

69. Defendant took adverse actions against Plaintiff because of her protected conduct.

70. The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

71. The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose sex discrimination and harassment and to participate in actions calculated to redress those grievances.

72. Plaintiff has suffered damages because of Defendant's actions.

### COUNT IV –§§ 760.01-760.11, FLORIDA STATUTES
### FLORIDA CIVIL RIGHTS ACT
### RETALIATION

73. Plaintiff realleges paragraphs 1-46.

74. Plaintiff engaged in protected conduct by objecting to the sex-based animus directed at her by Defendant's agents and employees.

75. Plaintiff is a female and is thus a member of a protected class.

76. Plaintiff has suffered a hostile environment based on sex.

77. The sexually harassing conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile or abusive.

78. Plaintiff found her work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct.

79. Management level employees knew, or should have known, of the abusive conduct. Plaintiff provided management level personnel with information sufficient to raise a probability of discrimination and harassment in the mind of a reasonable employer.

80. Defendant did not exercise reasonable care to prevent sexually harassing comments and conduct.

81. Defendant took adverse actions against Plaintiff because of her protected conduct.

82. The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of the Florida Civil Rights Act.

83. The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose sex discrimination and harassment and to participate in actions calculated to redress those grievances.

84. Plaintiff has suffered damages because of Defendant's actions.

## COUNT V
## FLORIDA PRIVATE WHISTLEBLOWER ACT
## §§ 448.101-105, FLORIDA STATUTES

85. Plaintiff realleges Paragraphs 1-46.

86. Plaintiff engaged in protected conduct by objecting to gender-based animus and her supervisor's sexual harassment of her by making internal complaints within Defendant's company.

87. Defendant took adverse actions against Plaintiff because of her protected conduct.

88. Defendant's actions were violations of laws, rules, and regulations, including, without limitation, Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

89. Plaintiff has suffered damages because of Defendant's actions.

## **PRAYER OF RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a) that process issue and this Court take jurisdiction over this case;

b)     judgement against Defendant and for Plaintiff awarding compensatory and damages on all Counts and punitive damages for Counts I-IV, for the Defendant' violations of law enumerated herein;

c)     judgement against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein and reinstatement for the Plaintiff, remedying all benefits of which Plaintiff has been unlawfully deprived;

d)     prejudgment interest;

e)     judgement against Defendant and for Plaintiff awarding Plaintiff her attorney's fees and costs;

f)     all equitable relief that is allowed by law;

g)     such other and further relief as is appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Filed this 7th day of March, 2022.

Respectfully submitted,

*/s/Richard E. Johnson*
Richard E. Johnson, Bar No 858323
LAW OFFICE OF RICHARD E. JOHNSON
rick@rej-law.com
314 West Jefferson Street
Tallahassee, Florida 32301
Telephone: (850) 425-1997
Facsimile: (850) 561-0836